UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THIPSUKON KAMNERDPILA,

    Plaintiff,

v.                                           Case No. 8:23-cv-2724-VMC-NHA

CITY OF ST. PETERSBURG,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant City of St. Petersburg's Amended Motion to Dismiss the Complaint (Doc. # 19), filed on December 29, 2023. Plaintiff Thipsukon Kamnerdpila responded on January 19, 2024. (Doc. # 29). The Motion is granted.

**I.  Background**

Kamnerdpila is a fifty-nine-year-old, Asian American woman who was born in Thailand. (Doc. # 1 at 3). She began working for the City as a customer service representative in the Utility Department in 2011. (Id.). In 2015, she moved to the position of accounting technician in the Utility Department. (Id.). In this role, "Kamnerdpila was tasked with reviewing water meter bills for customers, to flag and correct

1

mistakes in the billing process, and accomplish other related tasks." (Id.).

Beginning in fall of 2020, the Director of the Utility Department, Tammy Jerome, began promoting or hiring younger employees. This included promoting Tionti Thomas (African American Female - Mid 40s) to be a Customer Service Officer (and thus Kamnerdpila's supervisor) and selecting Lauren Gewandter (White Female – Mid 30s) to be a Billing & Collections Manager "even though [] Gewandter had limited knowledge and experience with respect to billing and collections." (Id. at 3-4).

Then, "[i]n early 2021, [] Gewandter became [] Kamnerdpila's supervisor and began making offensive comments about [] Kamnerdpila's English. [] Gewandter often told [] Kamnerdpila that '[her] English isn't good enough.'" (Id. at 4). Kamnerdpila's relationship with Gewandter was fraught in other ways. In November 2021, Gewandter wrote up Kamnerdpila "for submitting her daily report at 5:00 p.m. even though the timing of her submission did not cause any issues." (Id.). Yet, "Gewandter never wrote up other [non-Asian] Accounting Technicians in [] Kamnerdpila's office when they had previously submitted reports even after the 5:00 p.m. deadline." (Id.).

Later, in January 2022, the office experienced a Covid outbreak, causing many employees to be out sick and a backlog of work to form. Gewandter wrote up Kamnerdpila again for allowing a certain task to be backlogged even though it did not cause any ancillary issues. (Id. at 5). Gewandter issued "this write-up even though backlogs were common among other Accounting Technicians in [] Kamnerdpila's Office" and even though "Gewandter never previously wrote an employee up for these backlogs." (Id.). This second write-up caused Kamnerdpila to be suspended for two days. (Id.).

Kamnerdpila then complained to Human Resources ("HR") "that she faced a hostile work environment because of her race, color, national origin, and age." (Id. at 6). She reported that "Gewandter made unfounded complaints about her English and subjected her to disparate treatment by exposing her to unnecessary disciplinary action." (Id.). She "also mentioned that [] Jerome neglected Kathy McDow (White Female – Age 64) for a promotion to Supervisor in 2017 because she was 'too close to retirement,' evidencing the Utility Department's preference for youth over older and more experienced employees." (Id.).

Later, on May 3, 2022, while Kamnerdpila was out on FMLA leave, "Kamnerdpila received a message from her Union

3

Representative stating that she needed to print, sign, and return a Union Grievance Consent Form to [HR] that day or she would be unable to appeal the two-day suspension [] Gewandter had issued her in January 2022." (Id.). Because of an issue with her personal email, Kamnerdpila needed to print the form from her work computer at the office in order to sign it and turn it in to HR. (Id. at 6-7).

While trying to enter the office building at 5:30 p.m., Kamnerdpila encountered Gewandter and Thomas. (Id. at 7). Kamnerdpila believed that Thomas had given her permission to enter the building to print the form. However, while she was trying to log in to her email on her work computer, Gewandter interrupted her and told her "that she was not allowed to log-in to her email and that she had to leave immediately." (Id. at 7-8). Kamnerdpila obeyed Gewandter's order. (Id. at 8).

A few days later, on May 10, 2022, Kamnerdpila submitted an updated report to HR recounting the discrimination she faced in her department from Gewandter, Thomas, and Jerome based on her race, color, national origin, and age. (Id. at 9). Then, on May 11, 2022, "Jerome terminated [] Kamnerdpila based on false statements made by [] Gewandter and [] Thomas regarding [] Kamnerdpila's brief interaction with them when

4

she attempted to print out the Grievance Union Consent Form on May 3, 2022." (Id.). "Gewandter and [] Thomas falsely claimed that [] Kamnerdpila disobeyed a direct order and that she had allegedly violated a rule against using City equipment without authorization." (Id.).

Kamnerdpila initiated this action against the City on November 29, 2023, asserting claims for race, color, and national origin discrimination under Title VII (Count I) and the Florida Civil Rights Act ("FCRA") (Count IV), retaliation under Title VII and the FCRA (Counts II and VI), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and FCRA (Counts III and V). (Id.). Although the City filed an answer as to Counts II and VI (Doc. # 16), the City moves to dismiss Counts I, III, IV, and V. (Doc. # 19). Kamnerdpila has responded (Doc. # 29), and the Motion is ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the

5

complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

The City seeks to dismiss the Title VII and FCRA claims for race, color, and national origin discrimination and the ADEA and FCRA age discrimination claims.

### A. Race, Color, and National Origin Discrimination

In Counts I and IV, Kamnerdpila alleges she suffered both adverse employment actions and a hostile work environment based on her race, color, and national origin.

6

(Doc. # 1 at 9-10, 16-17). The City seeks dismissal of these claims to the extent they are based on the theory of hostile work environment. (Doc. # 19 at 2, 5-7).[1]

"To establish a hostile work environment claim, a plaintiff must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee — in this case, her race[, color, and national origin]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability." Banks v. Cypress Chase Condo. Ass'n B, Inc., 616 F. Supp. 3d 1316, 1321 (S.D. Fla. 2022) (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).[2]

---

[1] Because the City only addresses the hostile work environment theory, these Counts are not dismissed to the extent they are based on the disparate treatment theory.

[2] "The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Thus, the Court considers the Title VII and FCRA claims together.

"The fourth element requires a plaintiff to prove that the work environment is both subjectively and objectively hostile." Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1249 (11th Cir. 2014). "To evaluate whether a work environment is objectively hostile, [courts] consider four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. at 1250-51 (citation and internal quotation marks omitted). "'No single factor is required' to establish the objective component. Instead, the court is to judge the totality of the circumstances." Nelson v. Keep Smiling Dental, P.A., No. 8:21-cv-189-VMC-JSS, 2022 WL 485244, at *7 (M.D. Fla. Feb. 17, 2022) (citation omitted). While Kamnerdpila need not establish a prima facie case at the motion to dismiss stage, enough factual matter must be alleged to plausibly support that a hostile work environment existed.

The Court agrees with the City that the allegations of the complaint fall short of stating a plausible claim of a hostile work environment. Taking the allegations of the complaint as true, the conduct by Kamnerdpila's supervisors, including making comments that Kamnerdpila's "English isn't

8

good enough," two allegedly unwarranted disciplinary write-ups for Kamnerdpila's not performing duties quickly, and her termination for attempting to access her office computer while out on FMLA leave, was not severe or pervasive. See Banks, 616 F. Supp. 3d at 1321–22 ("Bujold's alleged conduct here — calling Banks a liar, referring to her as 'you people,' standing close to her, peering through the window at her, accusing her of poor performance, and yelling at her — falls short of creating a hostile work environment."); see also Henderson v. City of Birmingham, 826 F. App'x 736, 743 (11th Cir. 2020) (affirming dismissal of a hostile work environment claim where plaintiff Henderson alleged "Sergeant Newfield's interference with Henderson's patrol procedures, Newfield's search of Henderson's criminal history and discussing it with other officers, Internal Affairs' failure to conduct a proper investigation into Henderson's allegations of discrimination, and the ring investigation," which were not plausibly severe or pervasive).

True, Gewandter's occasional statements to Kamnerdpila that her English was poor were insensitive and offensive. (Doc. # 1 at 4). But those statements are not physically threatening or humiliating. Nor is it alleged that such offensive statements unreasonably interfered with

9

Kamnerdpila's work performance. In short, further allegations on her supervisors' conduct and its severity and pervasiveness are needed to plausibly state a claim for hostile work environment. See Thompson v. City of Miami Beach, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (granting motion to dismiss and noting that, while the three uses of a racial slur were "indeed offensive, neither alone nor in combination with other rude treatment at the hands of Jenkins over a two-year period do the three comments objectively state a cause of action for racial discrimination based on hostile work environment").

The Court determines, however, that amendment would not be futile here. Kamnerdpila may amend her complaint to add additional allegations in support of her hostile work environment claim, if she can.

    B.    **Age Discrimination**

In Counts III and VI, Kamnerdpila alleges she suffered age discrimination during her employment. (Doc. # 1 at 14-15, 18-20). Specifically, Kamnerdpila alleges that the City "terminated [her] because of her age." (Id. at 20). According to the City, Kamnerdpila failed "to allege any facts in the complaint suggesting that she was subjected to any act of discrimination based on her age." (Doc. # 19 at 7).

"The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age because of that employee's age."[3] Buchanan v. Delta Air Lines, Inc., 727 F. App'x 639, 641 (11th Cir. 2018) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). "To succeed at trial on an age-discrimination claim under the ADEA, the plaintiff must prove that age was the 'but-for' cause of the adverse employment decision giving rise to her complaint." Id. "Although an employment discrimination complaint need not allege facts sufficient to make out a prima facie case, it must nonetheless provide enough factual matter to plausibly suggest intentional discrimination." Id.

Here, Kamnerdpila has not plausibly alleged age discrimination. The allegations in the complaint related to age are thin and often conclusory. The complaint notes that two women younger than Kamnerdpila (Thomas and Gewandter) were selected for the positions of Customer Service Officer and Billing and Collections Manager. (Doc. # 1 at 3-4). But

---

[3] "Age discrimination claims brought under the Florida Civil Rights Act have been considered within the same framework used to decide actions brought pursuant to the ADEA." Zaben v. Air Prod. & Chems., Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997). Thus, the Court considers the ADEA and FCRA claims together.

11

there is no allegation that Thomas and Gewandter were chosen for these positions instead of older employees or Kamnerdpila herself. And the allegation that Jerome in 2017 did not promote an older employee in her sixties because she was "too close to retirement" does not reasonably support that age was the cause of Kamnerdpila's termination in 2022. (Id. at 6). The allegation that Jerome "always showed a strong preference for youthful employees over experienced and elderly employees" is conclusory. (Id. at 14).

Likewise, Kamnerdpila's allegation that the City "terminated [her] because of her age" (Id. at 20) is conclusory. Notably, there are no allegations that Kamnerdpila was treated differently than a specific, younger employee or was replaced by a substantially younger employee. See Pinkney v. Maverick Condo. Ass'n, Inc., No. 6:11-cv-241-PCF-DAB, 2011 WL 2433505, at *2 (M.D. Fla. June 14, 2011) ("The requisite causal connection between age and termination may be sufficiently pled by, *inter alia,* factual allegations indicating that the plaintiff was replaced by a substantially younger individual or that the plaintiff was treated differently than a similarly situated, substantially younger employee."). As currently pled, there are insufficient factual allegations to state a plausible claim of age

12

discrimination. See Smith v. CH2M Hill, Inc., 521 F. App'x 773, 775 (11th Cir. 2013) ("Here, Smith did not allege sufficient facts to allow us to reasonably infer that CH2M and OMI violated the but-for standard set forth in the ADEA. Therefore, we affirm the district court's dismissal of Smith's age discrimination claim." (citation omitted)). Counts III and VI are dismissed without prejudice.

Just as with the other discrimination claims, the Court is not convinced that amendment would be futile here. Thus, the Court permits Kamnerdpila to amend her age discrimination claims to plausibly allege that age discrimination was the but-for cause of her termination, if she can.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant City of St. Petersburg's Amended Motion to Dismiss the Complaint (Doc. # 19) is **GRANTED.**

(2) If she wishes to amend the dismissed claims, Plaintiff Thipsukon Kamnerdpila must file an amended complaint within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of July, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE